UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN ANDREWS,

        Plaintiff,                        CIVIL ACTION NO. 08-12296

        v.                                DISTRICT JUDGE DENISE PAGE HOOD

COMMISSIONER OF                  MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

      This is an action for judicial review of the defendant's decision denying plaintiff's application for social security disability benefits and supplemental security income (SSI). Plaintiff alleged that he became disabled as of May 15, 2004, due to problems with his back and knees which limited his ability to stand and bend. The defendant found that plaintiff had degenerative disc disease and could not perform his past work but could perform sedentary work which existed in significant numbers and therefore was not disabled. Plaintiff contends that this finding is not supported by substantial evidence. Defendant contends otherwise. The court finds that the opinion precludes meaningful judicial review, that the ALJ improperly relied on the "Grid," and that a vocational expert should have been called. For the reasons discussed in this Report, it is recommended that the defendant's motion for summary judgment be denied, that of the plaintiff be granted in part, and the matter be remanded under Sentence Four of 42 U.S.C.

403(g) for further proceedings consistent with this Report, including the testimony of a vocational expert.

At the time of the defendant's decision, plaintiff was 47 years old.  He has a high school education and past relevant work as a custodian/janitor, laborer, and teacher's aide.  (Tr. 20, 42, 61, 64)

The issue before the court is whether to affirm the Commissioner's determination.  In *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938).  The scope of our review is limited to an examination of the record only.  We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence.  *Reynolds v. Secretary of Health and Human Services*, 707 F.2d 927 (5th Cir. 1983).

*Brainard*, 889 F.2d at 681.

To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).  If a claimant establishes that he cannot perform his past relevant work, the burden is on the Commissioner to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in

the national economy. *Preslar v. Secretary of HHS*, 14 F.3d 1107 (6th Cir. 1994); *Kirk v. Secretary of HHS*, 667 F.2d 524, 529 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

At the hearing before the ALJ, plaintiff testified that he last worked three years before as a custodian but stopped after an accident at work when a table fell on him, he slipped on a wet floor, and crushed his back and injured his knee. (Tr.269, 275) Plaintiff developed numbness and pain in his left hand about 7 months before the hearing. (Tr. 270, 273) He saw a doctor about a month before the hearing but is not receiving medical treatment due to lack of insurance. (Tr. 270-271) Plaintiff lies in a recliner about 4 hours a day to alleviate his back pain and has received injections for pain in the leg, knee, and back. (Tr. 274) He has swelling in his left knee and has been prescribed a cane. (Tr. 272) He can lift a gallon of milk but not an object weighing 20 pounds. (Tr. 273-74)

*Medical Evidence*

Medical evidence was only cursorily summarized by the ALJ, and then not always accurately. The medical evidence shows that plaintiff has degenerative disc disease in his lower back and degenerative joint disease in his left knee. Plaintiff was injured in a fall at work in November, 2004. X-rays taken one week later showed no rib fractures. (Tr. 118) He treats with Dr. Herzog and Dr. Ring, and with Dr. Kohn. (Tr. 63) He had an arthroscopic meniscectomy of the left knee in March 2004 to repair a tear. He was doing fairly well until November, 2004, when he fell at work, sustained a closed head injury and exacerbated the low back pain. His complaints of low back pain were consistent with the objective findings of foraminal narrowing at L3-4 and L4-5 as shown on the MRI of the lumbar spine in January, 2005. There was no evidence of spinal stenosis or loss of disc height, however. (Tr. 112) In May 2005 and February

2006, EMGs showed no nerve root irritation in back or lower extremities.  The MRI of the brain in January 2005 showed no evidence for acute ischemia or enhancing mass lesions and prominence of the soft tissues of the nasopharnyx.  (Tr. 113)

Plaintiff was treated by Dr. Bhangu, M.D. from December 2004 (Tr. 110-111) through at least September 2005 at the request of Dr. Ring.  (Tr. 107)  Plaintiff's chief complaint was headache, which had been lasting a while.  It followed his closed head injury which occurred when he was trying to clean an overflow toilet at work, slipped, and fell backward hitting his head.   It is accompanied by poor memory, lack of concentration, and problems with short term memory. Plaintiff also has difficulty walking.  (Tr. 110)  Plaintiff tried several medications without success.  (Tr. 110)  Dr. Bhangu saw him in April 2005 (Tr. 108) and plaintiff had an EMG performed by Dr. Bhangu in May 2005.  The EMG was normal.  (Tr. 115)  Plaintiff had severe global headache with blurring of vision, phobophobia, and phobophobia.  He still had pain in his back and leg, difficulty walking and uses a cane.  Plaintiff was prescribed a new medication, Topamax, and Fioricet.  (Tr. 107)

Plaintiff saw Dr. Kohn of the Pain Management Center in January 2005 for outpatient consultation regarding the low back pain with radiation down his right leg.  (Tr. 121)  In a letter dated January 25, 2005, Dr. Kohn reports that plaintiff had been doing pretty well until November 2004.  (Tr. 171)  His back pain has been constant since the accident.  Plaintiff attended physical therapy but still has numbness and tingling of the right foot and the pain is exacerbated by activity.  He had been treated with various medications with little success.  He was on 800 mg ibuprofen and Valium.  A series of lumbar injections was recommended.  (Tr. 171)  Plaintiff missed some appointments in December 2004.  (Tr. 175)  By April, 2005, Dr.

Kohn opined that there was nothing more than he could offer plaintiff and Dr. Ring recommended an independent medical evaluation. (Tr. 178) In September 2005 plaintiff was still experiencing low back pain. He had received a series of epidural injections in February 2005 which gave him essentially no relief. (Tr. 120, 181) Dr. Kohn suggested that he see a spine surgeon. (Tr. 120)

Dr. Ring submitted office/progress notes of his treatment of plaintiff. Many of these are illegible. (Tr. 126-132) Plaintiff continued the physical therapy and also asked for and attended a second round of physical therapy. (Tr. 130) He reports some vertigo as well as back pain. *Id.* Dr. Ring submitted other office/progress notes from January 2005 through June 2007. (Tr. 153-163) These appear duplicative of the other records.

An MRI of the lumbar spine from January 2005 showed bilateral recess and bilateral neural foraminal narrowing at L3-4 and L4-5 levels from circumferential disc bulge, bilateral facet degenerative changes, and ligamentum thickening. There was no evidence of focal disc extrusions or spinal stenosis. (Tr. 186)

In October 2005 plaintiff was seen by Dr. Herzog, D.O., an eye specialist for blurred vision and headaches. The impression was visual blur secondary to pain medication and presbyopia. Dr. Herzog believed that prescription eyeglasses would correct his near vision (presbyopia). If the symptoms persisted, then further testing was recommended. (Tr. 179)

In December 2005 plaintiff was seen by Dr. Neil Friedman for range of motion studies. These were normal except for the lumbar spine which was limited by pain. (Tr. 139-140) Dr. Friedman writes in a letter that plaintiff has pain in the lower back, radiating to the left leg and his leg gives out occasionally while walking. (Tr. 141) On examination, occasional audible and

palpable pop was noted in the left knee, associated with full flexion and extension of the joint. (Tr. 142)  Plaintiff uses a cane and appears to lean heavily on it for assistance.  He is able to walk short distances without it but demonstrates decreased hip and knee flexion during the swing phase of the left leg resulting in a moderate limp to the left.  (Tr. 143)

A residual functional capacity assessment was prepared by Dr. DuCharme Nicole in January 2006.  Dr. Nicole opined after review of the records that plaintiff was limited to lifting ten pounds, both frequently and occasionally, could stand or walk 2 hours in a day but required a cane for ambulation, could sit for six hours, and was limited in lower extremities for push/pull operations.  His cane is needed for distances over 26 feet.  (Tr. 146)  He was not taking any medications but complained of severe headaches, pain radiating to left leg, and occasionally leg gives out while walking.  Postural limitations were also imposed.  Plaintiff can never balance, and only occasionally climb, stoop, kneel, crouch or crawl.  (Tr. 147)  The plaintiff's symptoms and medical appeared consistent with one another.  (Tr. 150)[1]

The EMG in February, 2006 was normal.  (Tr. 165) Also in February 2006, plaintiff underwent a pain study with Dr. Avery Jackson.  (Tr. 167)  The examination showed degenerative disc disease, normal lumbar spine movements, positive straight leg raising (but indication of pain was made before legs were raised), and normal muscle strength and tone.  (Tr. 168-169)

In August 2006 a prescriptive orthotic was recommended to deal with sharp pain in the medial plantar aspect of his heels.  (Tr. 164)

---

[1]The ALJ found plaintiff's testimony regarding functional limitations not fully credible.  There is no explanation for why this conclusion differed from that of the state medical reviewer.

In May 2007 Dr. Hemming, D.O.,saw plaintiff at the Greater Flint Sports Medicine Institute.[2] He reports that plaintiff was 6' 1" tall and weighed 231 pounds. He is not depressed or agitated. Plaintiff had left knee tenderness in the medial and lateral joint spaces but no effusion. The patella is well seated with active quadriceps function. Homans and Moses signs were negative. There was joint space loss in the left knee when standing and small amount of remaining cartilage. After examination, the impression was moderate left knee medial compartment osteoarthritis. He was prescribed an anti-inflammatory, rejecting a cortisone injection. (Tr. 197)

In June 2007 Dr. Kohn reports that plaintiff returned for follow up. The pain is somewhat different than before and he was not on any medication. He walks with a markedly antalgic gait due to knee pain. There was exquisite tenderness in the left sacroiliac joint and mild to moderate tenderness to palpation in the right. Deep tendon reflexes were symmetrical in patellar and Achilles area. Straight leg raising was negative. Patrick's testing was positive. Dr. Kohn diagnosed sacroilitis, left greater than right. Joint injections were recommended. (Tr. 199-200)

*Analysis*

*The Decision Fails to Provide a Basis for Meaningful Judicial Review*

Initially, it must be stated that the ALJ's decision essentially fails to provide a basis for meaningful judicial review and could be reversed on that ground alone. Only a cursory summary of the medical evidence was provided and some of that erroneous, no testimony was elicited at the hearing regarding plaintiff's activities, the references to other portions of the record setting

---

[2]The ALJ mistakenly refers to Dr. Heming as a chiropractor.

-7-

forth the daily activities is vague, and no vocational expert was called at this step-five determination. The Third Circuit held in *Burnett v. Commissioner,* 220 F.3d 112 (3d Cir. 2000), that an ALJ must provide sufficient reasoning for a court to conduct "meaningful judicial review" of the ALJ's decision. That circuit subsequently expressed further concern, finding that conclusory statements do not satisfy *Burnett. See Fargnoli v. Massanari,* 247 F.3d 34, 40 n. 4 (3d Cir.2001) (noting that an ALJ's step-three finding that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment and ALJ opinion probably was too conclusory to permit judicial review under *Burnett,* but declining to decide the issue as the claimant had not raised it). Where the ALJ failed to analyze the evidence in a sufficient manner, including objective medical reports and the claimant's testimony, there is no opportunity for judicial review. *See Burnett,* 220 F.3d at 119-20; *see also Fargnoli,* 247 F.3d at 40 n. 4, *Lopez v. Commissioner of Social Sec.* 270 Fed.Appx. 119, 121, 2008 WL 741042, 1 (C.A.3 (N.J.),2008)

*Lopez* involved a step four determination and the court declined to hold that the ALJ was required to call a vocational expert, stating "At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ." *See* 20 C.F.R. § 404.1560(b)(2); *see also* Social Security Ruling 00-4p (2000). However here, the decision was not made at step four but at step five, when the burden had shifted to the Commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.,* 807 F.2d

-8-

292, 294 (1st Cir. 1986).  *Maurice v. Barnhart*, 2002 WL 449288, 2 (D. ME 2002).  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.' " *Id.* (citations omitted).  *Bevelle v. Commissioner of Social Security* 2008 WL 5351020, 5 (E.D. MI 2008).  Here, neither the record nor the opinion provides a basis for finding that the commissioner's burden has been sustained.

*Lack of Vocational Expert Testimony*

As noted by both parties, once the ALJ determined that plaintiff could not perform his past relevant work (Tr. 19), the burden shifted to the commissioner to show that there was other work existing in the national economy that plaintiff could perform.  Here, plaintiff is a younger individual whom the ALJ found was restricted to sedentary work.  Thus, the ALJ applied Rule 201.21 "as a framework" (Tr. 19, Par.6, 7) to reach a conclusion of not disabled.  Plaintiff alleges that the defendant improperly relied on the "Grids" to reach the conclusion of not disabled.  These "Grids", i.e., the Medical-Vocational guidelines, are found in the regulations and are a shortcut to eliminate the need for calling a vocational expert.  *Hurt v. HHS*, 816 F.2d 1141 (6th Cir. 1987).

As was noted in *Kirk v. Secretary of HHS*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983):

> "When the claimant does match one of the grid's patterns, then all
> the grid does is announce that substantial gainful work is available

>    in the national economy for that particular individual; in other
>    words, once a finding is made that the individual can do light
>    work, for example, the grid operates to declare that light work is
>    available."

667 F.2d at 535.

The grids are not applicable to predict disability when non-exertional limitations are the focus of the impairment, and should be applied only when the individual is capable of performing a wide range of jobs at a particular level, i.e., sedentary, light or medium. *Kirk*, 667 F.2d at 528-529; *Hurt*, 816 F.2d at 1143.

The ALJ stated that he relied on the progress notes of Dr. Ring and Dr. Kohn, plaintiff's treating physicians, in finding that plaintiff's condition had stabilized. No further specificity is given. The ALJ stated that when Dr. Kohn first saw plaintiff in 2005 there were complaints of constant back pain. No surgery was recommended and plaintiff received some epidural shots. In April 2005, Dr. Kohn said there was nothing more that he could do and recommended an independent medical evaluation. Plaintiff still complained of numbness in his right foot and back pain had not responded to physical therapy or pain medication. In June 2007, Dr. Kohn again saw plaintiff and found that the locus of pain had shifted to the low back which was tender with paravertebral muscle spasms. Flexion and extension were still restricted and the right sciatic notch was still tender. Motor strength testing was decreased in the left knee and plaintiff had an antalgic gait. The ALJ found that the examination had very few changes from the January 2005 exam and concluded the condition was stable. (Tr. 18-19) The ALJ then continued: "Based on the opinions of Dr. Ring and Dr. Kohn, the undersigned limits the claimant to the sedentary level and finds that the vocational base is large enough that the claimant could do substantial gainful activities (see Exhibits 3F/5[Medical Records of Dr. Harvey Ring, D.O

from 11-11-03 to 10-3-05] and 6F [Medical Records covering the period from 1/16/05 to 6/11/07 from Dr. Harvey Ring D.O.)" (Tr. 19) Exhibit 3F/5 is found at pages 124-132 and Exhibit 6F is contained at pages 153-194.  The ALJ merely cites to these exhibits generally and makes no reasoned basis for the conclusion that plaintiff can perform a "wide range" of sedentary work. The ALJ did not mention anything about plaintiff's pain and discounted his credibility saying that the pain has not stopped him from "watching TV, reading, or remembering doctor's appointments.[3]

In *Heggarty v. Sullivan,* 947 F.2d 990, 996 (1st Cir. 1991) the First Circuit held that "If the occupational base is significantly limited by a nonexertional impairment, the Secretary [now the Commissioner] may not rely on the Grid to carry the burden of proving that there are other jobs a claimant can do.  Usually, testimony of a vocational expert is required."  When the Grid is used as a framework, and the reduction of the occupational base is more than marginal, the testimony of a vocational expert is required. *Burgos Lopez v. Secretary of Health & Human Servs.,* 747 F.2d 37, 42 (1st Cir.1984).

The administrative law judge here stated that he "used [the Grid] as a framework for decision-making ." (Record at 19)  But, he failed to call a vocational expert.  When he used the Grid as a framework, there is an implication that the impact of the noted nonexertional impairments is more than slight, because the Grid is to be used directly only when such an

---

[3]No testimony was elicited at the hearing regarding plaintiff's daily activities.  Plaintiff completed a report of daily activities (Tr. 83-90) which reported that he watched TV, read a book two days out of the week but had difficulty reading because of eye problems,  goes to doctors and goes to church every other Sunday.  He reports that he has continuing pain and has difficulty following spoken instructions. (Tr. 88)  He uses a cane, a knee brace, glasses, and a hearing aid, all of which were prescribed by doctors. (Tr. 89)  He can't handle stress and has difficulty handling changes in routine but he tries to adjust. *Id*.

impact is not significant. *See Rose v. Shalala,* 34 F.3d 13, 19 (1st Cir. 1994). When the Grid is used as a framework the administrative law judge must either consult a vocational expert, *Burgos Lopez v. Secretary of Health & Human Servs.,* 747 F.2d 37, 42 (1st Cir. 1984), or demonstrate ample support in the record for the proposition that the significant nonexertional impairment at issue nonetheless only marginally reduces the occupational base, *Ortiz v. Secretary of Health & Human Servs.,* 890 F.2d 520, 524-26 (1st Cir.1989). No vocational expert testified at the hearing in this case. The record does not support a conclusion that plaintiff's pain is insignificant. As discussed above, there is little or no evidence in the record of this case, and specifically in the administrative law judge's opinion,to suggest that plaintiff can perform a wide variety of sedentary work. The Commissioner's burden is not met.

*The ALJ Erred in Determining Residual Functional Capacity and Using  Medical-Vocational Rule 201.21*

Plaintiff argues that the ALJ erred in relying on solely on the medical-vocational guidelines, otherwise known as the "Grid" and not calling a vocational expert, in determining that plaintiff is not disabled. This Circuit has held that the Commissioner can meet his burden at step five of his analysis by referring to the Grid, 20 C.F.R. Pt. 404, Subpt. P, App. 2, which dictates a finding of "disabled" or "not disabled" based on the claimant's exertional restrictions, age, education, and prior work experience. *See Born v. Sec'y of Health & Human Servs.,* 923 F.2d 1168, 1173 (6th Cir. 1990). But if a claimant has both exertional and nonexertional impairments, the Commissioner is not permitted to rely on the Grid alone to determine whether a disability exists. *See id.* at 1173-74; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e). If a claimant's non-exertional limitations prevent the claimant from doing the full range of work at the designated level, then the Commissioner must come forward with some reliable evidence

showing that there remain a significant number of jobs that the claimant can perform, taking into account the claimant's exertional and non-exertional limitations.  *See Shelman v. Heckler,* 821 F.2d 316, 321-22 (6th Cir.1987).  Non-exertional impairments are defined as "certain mental, sensory, or skin impairments" or "impairments [which] result solely in postural and manipulative limitations or environmental restrictions."  20 C.F.R. Part 404, Subpt. P, App. 2, Section 200.00(e).  Here, the medical evidence and additional limitations set forth by the state agency physicians preclude direct application of the grid and utilization of Rule 201.21.  The ALJ did not call a vocational expert but stated used Rule 201.21 "as a framework." (Tr. 19, Par. 6,7)  It is apparent, however, that the Grid was not truly used as a framework, but was used without regard for plaintiff's non-exertional impairments.  The state reviewer's postural limitations, the plaintiff's allegations of pain, and difficulty understanding spoken instructions and adjustments to routine were not discussed and barely alluded to in the ALJ opinion.  The administrative law judge's failure to discuss the limitations in connection with his conclusion that the plaintiff's impairments caused little or no erosion of his ability to perform sedentary work is troubling.  The Grid "can only be applied when claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level."  *Rose v. Shalala,* 34 F.3d 13, 19 (1st Cir.1994).  "If a non-strength impairment, even though considered significant, has the effect only of reducing [the] occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability."  *Ortiz v. Secretary of Health & Human Servs.,* 890 F.2d 520, 524 (1st Cir. 1989).  But here, the postural limitations and the other impairments suggest a reduction of the occupational base that would be more than marginal.  *See generally* Social Security Rulings 85-15 & 85-16, reprinted in *West's Social Security Reporting*

*Service* Rulings 1983-1991 at 343-56; *Heggarty v. Sullivan,* 947 F.2d 990, 996-97 (1st Cir. 1991).  No vocational expert was consulted in this case.  The decision cannot be affirmed.

The government argues that if the court determines that the ALJ's decision is not supported by substantial evidence, it should be remanded for further proceedings as opposed to a remand for an award of benefits.  The government notes that an award of benefits is only appropriate where all factual issues have been resolved and the court can conclude with some certainty that the plaintiff is totally disabled.  *Faucher v. Secretary of HHS*, 17 F3d 171, 176 (6th Cir. 1994).  The court agrees, but notes that if there is again a decision which denies benefits and which again precludes meaningful review, the court would not hesitate to recommend EAJA fees in addition to fees under 42 U.S.C. §405(g) for requiring the court and the plaintiff's counsel to undergo this substantial expenditure of resources twice because the ALJ failed to fulfil his responsibilities and the government counsel persisted in advocating for the decision.  The district court may well consider additional sanctions in her discretion.  The plaintiff is entitled to remand for further proceedings consistent with this report, including the testimony of a vocational expert.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

>   s/Virginia M. Morgan
>   Virginia M. Morgan
>   United States Magistrate Judge

Dated: February 5, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on February 5, 2009.

>   s/Jane Johnson
>   Case Manager to
>   Magistrate Judge Virginia M. Morgan